FORM 104 (10/06)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** <br> John H. Litzler, Chapter 7 Trustee of TIC United Corp. | **DEFENDANTS** <br> Gary Benoit and Helen Benoit |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br> See attached. | **ATTORNEYS** (If Known) <br> See attached. |
| **PARTY** (Check One Box Only) <br> ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor ☐ Other <br> ☒ Trustee | **PARTY** (Check One Box Only) <br> ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ☒ Creditor ☐ Other <br> ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Trustee's Complaint for Preliminary and Permanent Injunctive Relief and Objection to Claims, pursuant to 11 U.S.C. 105 and 502 and Bankruptcy Rules 3007 and 7001.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce/sep property settlement/decree
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR TIC United Corp. | | BANKRUPTCY CASE NO. 00-37234 | |
| DISTRICT IN WHICH CASE IS PENDING Northern District of Texas | DIVISIONAL OFFICE Dallas | NAME OF JUDGE Barbara J. Houser | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. | |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE | |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) *Jacob L. Newton* (signature) | | | |
| DATE 4/9/2007 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Jacob L. Newton | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Parties.** Give the names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if known.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

Attorneys for Plaintiff John H. Litzler, Chapter 7 Trustee of TIC United Corp.

    Peter C. D'Apice
    Jacob L. Newton
    Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation
    2323 Bryan Street, Suite 2200
    Dallas, TX 75201
    (214) 969-4900

Attorneys for Defendants Gary Benoit and Helen Benoit

    Carlton Cheramie
    Cheramie & Stentz
    14514 West Main Street
    Cut Off, LA 70345
    (985) 632-2778

    Carlton Cheramie
    Cheramie & Stentz
    P.O. Box 640
    Cut Off, LA 70345-0640
    (985) 632-2778

Peter C. D'Apice
State Bar No. 05377783
Jacob L. Newton
State Bar No. 24046523
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA**
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, TX 75201-2689
Phone: (214) 969-4900
Facsimile: (214) 969-4999

**ATTORNEYS FOR THE TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 7 |
| | § | |
| TIC UNITED CORP., | § | Case No. 00-37234-BJH-7 |
| | § | |
| Debtor | § | |
| JOHN H. LITZLER, Chapter 7 Trustee | § | |
| For the Estate of TIC United Corp. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary Number _____ |
| | § | |
| GARY BENOIT AND HELEN BENOIT | § | |
| | § | |
| Defendants | § | |

### TRUSTEE'S COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND OBJECTION TO CLAIM

John H. Litzler, Chapter 7 trustee ("Plaintiff" or "Trustee") for the estate of TIC United Corp. in the above-captioned chapter 7 case, hereby files this Complaint for Preliminary and Permanent Injunctive Relief and Objection of Claim (the "Complaint") against defendants Gary Benoit and Helen Benoit ("Defendants") pursuant to 11 U.S.C. §§ 105 and 502 and Federal Rules of Bankruptcy Procedure 3007 and 7001, and respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and FED R. BANKR. P. 3007 and 7001(7). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409

## PARTIES

2. Plaintiff John H. Litzler is the Chapter 7 Trustee for the debtor, TIC United Corp. ("Debtor").

3. The Defendants are each individuals who may be served pursuant to Fed. R. Bankr. P. 7004 via first class mail, postage prepaid at the addresses listed in the service list attached hereto and incorporated herein by reference.

## BACKGROUND

4. The Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on November 7, 2000 (the "Petition Date"), and thereafter continued operating its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

5. As of the Petition Date, the Debtor employed in excess of 2,620 people, including approximately 756 employee-drivers and approximately 400 owner-operator drivers, and owned or operated no fewer than 3,000 tractors, trailers and other pieces of rolling stock.

6. By the very nature of its business, the Debtor was exposed to potential liability for personal injury, bodily injury, economic loss, property damage, and wrongful death claims under applicable tort and general liability laws arising from both pre-petition and post-petition operation of its businesses (all such claims are referred to herein as the "Tort Claims"). These Tort Claims have arisen primarily from accidents involving trucks, trailers and other rolling stock owned or operated by the Debtor.

2

7. The Debtor's Chapter 11 case was converted to one under Chapter 7 by Order of the Court dated February 28, 2003, effective as of March 3, 2003 (the "Conversion Date"). The Trustee was appointed by the Office of the United States Trustee on or about March 3, 2003.

8. During the course of the Debtor's Chapter 7 bankruptcy proceeding, the Trustee became concerned about the estate's potential exposure in tort claims arising from the Debtor's post-petition operations of its trucking business and covered by policies written by Lumbermans Insurance Company, a unit of Kemper Insurance Company (collectively, "Kemper"). Accordingly, on January 5, 2004, in order to address and resolve the numerous Tort Claims, Workers' Comp Claims, and Products Liability Claims[1] (collectively, the "Damage Claims"), covered by Kemper, the Trustee filed his Motion for Approval of Mandatory Alternative Dispute Resolution Procedure (the "ADR Motion"), seeking to channel all potential Damage Claims into an alternative dispute resolution procedure (the "ADR Procedure"). The Court held a hearing on this matter on January 28, 2004, and entered its Order Granting Trustee's Motion For Approval Of Mandatory Alternative Dispute Resolution Procedure (the "ADR Order") on April 1, 2004.

9. Under the Debtor's Kemper policies, as set forth in the ADR Motion, Kemper and all of the Debtor's drivers and employees are indemnitees of the Debtor for any Damage Claim asserted against them (collectively, the "Indemnitees"). As the Court may recall from the Trustee's ADR Motion, the Debtor has a $1 million deductible self-insured retention ("SIR") on its auto-liability policies from Kemper, and a $500,000 SIR on its workers' compensation policies. Because the Debtor is not now funding the SIR amounts under the primary Kemper policies, Kemper must pay all expense and indemnity costs. Debtor's obligations to fund the

---

[1] All terms not specifically defined herein shall have the meaning ascribed to such terms in the Trustee's ADR Motion.

3

SIR amounts under the Kemper auto-liability policies is secured by cash ("Cash") that Debtor transferred to Kemper during the chapter 11 proceedings as security for Debtor's SIR obligations, as well as by a letter of credit posted by the Trustee through JP Morgan Chase, which replaced a letter of credit posted by CitiCapital Commercial Corporation. Thus, as Kemper pays defense and indemnity costs on behalf of the Indemnitees, Kemper drew down on the Cash first, as ordered by the Court, and is now drawing down the letter of credit. Consequently, any pursuit of a lawsuit against Debtor's Indemnitees has a direct and adverse impact on estate property.

10. In the ADR Order, the Court found that the ADR Procedure ordered by the Court will inure to the benefit of all Damage Claimants, as well as all interested parties under the circumstances. The litigation defense costs and judgments that may be incurred by the Estate if personal injury, wrongful death, and property damage lawsuits are prosecuted against any Indemnitee will seriously deplete the assets of the estate and adversely affect the amounts that other claimants will ultimately receive through the Debtor's liquidation.

11. In granting the ADR Motion, the Court ultimately concluded that a balancing of the interests of the Damage Claimants and the interests of the Debtor and its creditors mandated the establishment of a simple, economical procedure for the resolution of tort claims.

12. The Court thus granted the ADR Motion and approved the ADR Procedure. Pursuant to the Trustee's ADR Motion and the ADR Order, all tort claimants pursuing recovery under the Debtor's Kemper insurance policies must not only have filed a timely proof of claim prior to the Bar Date,[2] but must also participate in the ADR Procedure by filing a timely

---

[2] The Bar Date is defined in the ADR Motion and the ADR Procedure as July 15, 2003, for Chapter 11 Administrative Expense Claims and August 18, 2003, for all other claims.

Confirmation of Loss Form and, if the Third-Party Administrator does not accept their claim, by participating in mediation proceedings.

13. More particularly, the ADR Procedure provides as follows:

> On or before the Bar Date, each creditor pursuant to Fed. R. Bankr. P. 3003(c)(3), including but not necessarily limited to Claimants having a Damage Claim against the Debtor or employees, servants or agents of the Debtor, including those Claimants who believe they are covered by the Debtor's insurance, shall have filed a Proof of Claim with the Clerk of the Bankruptcy Court.

ADR Procedure, ¶ 4.

> You must submit to the Third-Party Administrator a Confirmation of Loss using the form provided to you within thirty (30) days of service of this ADR Procedure.

ADR Procedure, ¶ 1.

> If the Damage Claim is not settled, the parties must appear before a neutral Mediator and discuss why the Damage Claim has not been settled.

ADR Procedure, ¶ 1.

14. As indicated by the quoted provisions below, the ADR Procedure consistently states that compliance with the ADR Procedure is a prerequisite to allowance of a Damage Claim against the Estate:

- "[I]t is very important that you read and comply with these procedures; <u>your failure to do so may result in the disallowance of your Damage Claim….</u>" ADR Procedure, p. 1 (underscore added).

- "If you have a Damage Claim you <u>must</u> follow this ADR Procedure." ADR Procedure, ¶ 1 (underscore in original).

- "Each Claimant shall participate in this ADR." ADR Procedure, ¶ 6.

5

- "No person or entity shall be allowed to assert any Damage Claim against such insurance policies, or against the Debtor, the Insurer, or any other insured unless they have first complied in good faith and completed this mandatory ADR Procedure." ADR Procedure, ¶ 7.

15. Moreover, as stated in Paragraph 8(a) of the ADR Procedure, Damage Claimants were clearly and unequivocally put on notice that their failure to comply with the Court-ordered ADR Procedure could lead to the Court striking their Damage Claim:

> **ANY CLAIMANT WHO DOES NOT TIMELY RETURN A COMPLETED CONFIRMATION OF LOSS FORM, UNLESS OTHERWISE AGREED TO BY THE THIRD-PARTY ADMINISTRATOR, (i) SHALL BE DISQUALIFIED FROM PARTICIPATING IN THE ADR PROCEDURE, (ii) SHALL NOT BE ENTITLED TO RELIEF FROM THE AUTOMATIC STAY OF SECTION 362 OF THE BANKRUPTCY CODE, AND (iii) MAY HAVE ITS DAMAGE CLAIM DISALLOWED.**

Emphasis in original.

16. Upon entry of the ADR Order, the Trustee served a true and correct copy of the ADR Order, together with the ADR Procedure and all exhibits, including but not limited to the Confirmation of Loss Form, upon each Damage Claimant having a known address and any known counsel for such Damage Claimant. While Defendants herein were inadvertently omitted from the original service list in 2004, the Trustee corrected this omission by serving the ADR Order and the ADR Procedures on both the Defendants and their counsel on September 15, 2006. Accordingly, each Defendant is a Damage Claimant subject to the mandatory terms and provisions of the ADR Order and ADR Procedures.

17. Defendants have each failed and refused to timely comply with the mandates of the ADR Procedure. Therefore, their claims, lawsuits and/or potential claims and lawsuits against the Debtor or its Indemnitees should be preliminarily and permanently enjoined. Allowing Defendants to commence or continue actions against the Debtor or its Indemnitees

would frustrate the Trustee's effort to obtain the fair and equitable distribution of assets to similarly-situated creditors, would result in unreasonable delays to those creditors that did timely comply with the Court-ordered ADR Procedures, would cause the dissipation of valuable Estate assets, and would also divert the energies of the Trustee and his counsel, to the detriment of the Estate and its entire creditor body, toward individuals who have chosen to ignore a mandatory Court order. Accordingly, the Trustee seeks a preliminary and permanent injunction under 11 U.S.C. § 105 enjoining the Defendants, including their attorneys, agents, assigns, and representatives, from commencing or continuing any action against the Debtor or its Indemnitees and from asserting any claim against the Debtor's Estate.

### **FIRST CAUSE OF ACTION – INJUNCTIVE RELIEF**

18. The Trustee repeats and alleges each of the allegations contained in paragraphs 1-17 above as though fully set forth herein.

19. The Trustee requests preliminary and permanent relief, pursuant to Section 105 of the Bankruptcy Code, enjoining the Defendants, including their attorneys, agents, assigns, and representatives, from commencing or continuing any action against the Debtor or its Indemnitees with respect to Damage Claims, or from asserting any claim against the Debtor's Estate.

20. Pursuant to the applicable insurance agreements, the Indemnitees, including driver and named defendants Edward Spell and Lumbermans Mutual Casualty Insurance Company, are entitled to indemnification for all defense costs and judgments entered against them. If Kemper funds a defense of these actions and a judgment is entered against an Indemnitee, Kemper will draw down these amounts from the Debtor's letter of credit pursuant to the relevant insurance agreements, thus draining away estate assets.

21. Since the Debtor's Estate, rather than the Indemnitees, ultimately bears the expense for all amounts up to the self-insured retention limit with respect to the Damage Claims, any action taken by any of the Defendants against the Debtor or its Indemnitees is tantamount to an action against the Debtor and the property of the Debtor's estate. These Defendants have had ample opportunity to comply with the mandatory ADR Procedure, but have failed and refused to do so. Accordingly, preliminary and permanent relief is necessary in order to maximize all Estate assets, including the proceeds of the letter of credit, and to insure Kemper's timely release of the unused portion of the letter of credit for the benefit of the other creditors of the Estate.

22. The Trustee has no adequate remedy at law. The same factors govern an application for a temporary restraining order as govern a request for a preliminary injunction. *Hunt v. Bankers Trust Co.*, 646 F. Supp. 59, 66 (N.D. Tex. 1986). Those factors include (1) the threat of irreparable harm to the movant; (2) the balance between the potential harm to the movant and any harm that granting the injunction will cause to other parties to the litigation; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 765 (5th Cir. 1995). All the factors weigh in favor of granting the relief requested herein.

23. If Defendants are not enjoined from proceeding against the Debtor and its Indemnitees, the Debtor's Estate will be irreparably injured by the adverse effect on the Trustee's efforts to administer this Estate and the ADR Procedure fairly and equitably, and the Estate and its entire creditor body will be harmed by the resulting loss of the proceeds of the letter of credit.

24. The Defendants have failed and refused to comply with the Court-ordered mandatory ADR Procedure. In addition, the Defendants have not even filed proofs of claim

against the Estate. Allowing Defendants to commence or continue actions in diverse jurisdictions against the Indemnitees is effectively an end-run around the mandatory ADR Procedure, and will hinder the Trustee's efforts to effectively administer the ADR process and treat similarly situated claims fairly. It would also be detrimental to the Debtor's Estate, through the depletion of the Estate assets backing up the letter of credit, and would frustrate the purpose of the mandatory ADR Procedure.

25. While the requested relief will result in an injunction precluding Defendants from pursuing recover against Debtor or its Indemnitees, such relief is appropriate in that it is the only fair and equitable manner of protecting and preserving the remaining portion of the letter of credit for the benefit of the creditors who timely and properly complied with the mandatory ADR Procedure and the benefit of the estate as a whole. The ADR Motion was filed over three years ago. The Trustee served the Defendants with the ADR Order and the ADR Procedures by mailing a copy of same to the last known address in the Trustee's file for Defendants, but such service was refused on the grounds that Defendants Gary and Helen Benoit were "not at this address." Additionally, the Trustee also served Defendants' counsel with the ADR Order and the ADR Procedures in September 2006, and the Trustee's file contains a certified mail "greencard" evidencing that Defendants' counsel accepted such service on September 18, 2006. Notwithstanding such service, Defendants have chosen to completely ignore one or more of the mandatory provisions of the Court's ADR Order and ADR Procedure. Hence, the requested relief will enable the Trustee to protect the interests of the estate and the interests of *all* creditors. The potential harm to the Trustee and the Debtor's estate, therefore, more than outweighs the burden upon the Defendants, who have chosen this path of their own volition.

26. As the Court has previously entered the ADR Order and approved the ADR Procedure, and as the Trustee properly and timely served the ADR Order and ADR Procedure upon the Defendants herein, it is highly likely that the Trustee will succeed on his request for preliminary and permanent injunctive relief against the Defendants based upon their failure and refusal to comply with the mandatory terms and provisions of the ADR Procedure. Moreover, as adequate notice was given to each Defendant, the public interest weighs in favor of enforcing the terms of the Court's ADR Order.

27. Accordingly, pursuant to Section 105 of the Bankruptcy Code, the Debtor and its estate is entitled to a preliminary and permanent injunction against the Defendants, restraining the commencement or continuation of any action against the Debtor or its Indemnitees, including named defendants Edward Spell and Lumbermans Mutual Casualty Insurance company, with respect to the Damage Claims.

## **OBJECTION TO CLAIM**

28. Pursuant to 11 U.S.C. § 502 of the Bankruptcy Code, the Trustee requests that any claims made by Defendants against the Debtor be disallowed on the grounds that Defendants have not filed a proof of claim and have not complied with the ADR procedure either by failing to provide the required Confirmation of Loss form or otherwise failing to comply with the terms of the ADR Procedure, thereby precluding Defendants from holding valid claims against the Debtor.

## **RESERVATION OF RIGHTS**

29. The Trustee hereby reserves all parties' rights to object in the future to any of the Claims of the Defendants on any ground, whether legal or equitable, and whether or not stated herein, and to amend, modify and/or supplement this Complaint and Objection to Claims.

30. The Trustee hereby reserves his right to object to or assert any other defenses, counterclaims or offsets he may have in respect of the Claims of the Defendants (or any portion thereof) to the extent such Claims are not disallowed and expunged by this Complaint and Objection to Claims.

31. In addition to the above reservations of rights, the Trustee specifically asserts any and all applicable affirmative defenses, including accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

## **NO PREVIOUS REQUEST**

32. No previous request for the relief set forth herein has been made to this or any other Court.

WHEREFORE, the Trustee respectfully requests that the Court enter an order restraining Defendants from commencing or continuing any action against the Debtor or its Indemnitees, including named defendants Edward Spell and Lumbermans Mutual Casualty Insurance company, with respect to any Damage Claims, and for such other and further relief as is just and proper.

Respectfully submitted this 9th day of April 2007,

> **STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**
>
> A Professional Corporation
>
> By: /s/ *Jacob L. Newton*
>
>     Peter C. D'Apice
>     State Bar No. 05377783
>     Jacob L. Newton
>     State Bar No. 24046523
>
> 2323 Bryan Street, Suite 2200
> Dallas, TX 75201-2689
> Telephone: (214) 969-4900
> Fax: (214) 969-4999
>
> **ATTORNEYS FOR THE TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the persons identified below via first class mail, postage prepaid, on the 9th day of April 2007.

| | |
|---|---|
| Gary Benoit and Helen Benoit<br>c/o Carlton Cheramie<br>Cheramie & Stentz<br>14514 West Main Street<br>Cut Off, LA 70345 | Gary Benoit and Helen Benoit<br>c/o Carlton Cheramie<br>Cheramie & Stentz<br>P.O. Box 640<br>Cut Off, LA 70345-0640 |
| Gary Benoit and Helen Benoit<br>506 Ledet Dr.<br>Thibodaux, LA 70301 | George F. McElreath, Esq.<br>Office of the United States Trustee<br>1100 Commerce Street, Room 9C60<br>Dallas, Texas 75242-1496 |
| John H. Litzler, Esq.<br>Litzler Segner Shaw & McKenney<br>1412 Main Street, 24th Floor<br>Dallas, Texas 75202 | |

                                                      */s/ Jacob L. Newton*
                                                      Jacob L. Newton